Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 2 8 2024

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHAD WINSTON VANATTA,

    Defendant.

Case No. 2:23-CR-47-TOR-4

PLEA AGREEMENT

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Richard R. Barker, Assistant United States Attorney for the Eastern District of Washington, and Defendant, CHAD WINSTON VANATTA ("Defendant"), both individually and by and through Defendant's counsel, David Partovi, agree to the following Plea Agreement:

1.    <u>Guilty Plea and Maximum Statutory Penalties</u>:

Defendant agrees to enter a plea of guilty to Count 5 of the Indictment filed on April 18, 2023, charging Defendant with Distribution of 5 Grams or More of Actual (Pure) Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii).

PLEA AGREEMENT - 1

Defendant understands that the following potential penalties apply:

    a.    a term of imprisonment of not less than 5 years and not more than 40 years;

    b.    a term of supervised release of not less than 4 years and up to a lifetime;

    c.    a fine of up to $5,000,000;

    d.    denial of federal benefits; and

    e.    a $100 special penalty assessment.

2. **Supervised Release**

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. **Denial of Federal Benefits:**

Defendant understands that by entering this plea of guilty, Defendant is no longer eligible for assistance under any state program funded under part A of Title

PLEA AGREEMENT - 2

IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a. pleading guilty in this case may have immigration consequences;

    b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. <u>The Court is Not a Party to the Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a. sentencing is a matter solely within the discretion of the Court;

PLEA AGREEMENT - 3

b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

6. <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a). The right to a jury trial;

(b). The right to see, hear and question the witnesses;

(c). The right to remain silent at trial;

(d). The right to testify at trial; and

(e). The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted by an attorney through the sentencing and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

PLEA AGREEMENT - 4

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7. <u>Elements of the Offense</u>:

The United States and Defendant agree that in order to convict Defendant of Count 5, Distribution of 5 Grams or More of Actual (Pure) Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii), the United States would have to prove beyond a reasonable doubt the following elements:

*First*, on or about February 16, 2023, within the Eastern District of Washington, Defendant knowingly distributed a mixture or substance containing a detectable amount of methamphetamine;

*Second*, Defendant knew that it was methamphetamine or some other federally controlled substance; and

*Third*, Defendant distributed 5 grams or more of actual (pure) methamphetamine.

8. <u>Statement of Facts</u>:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea and it does not contain all facts which could be proven by the United States. The stipulation also does not contain each and every fact known to Defendant

PLEA AGREEMENT - 5

concerning his involvement and the involvement of others in the charges set forth in the Indictment.

## Background

By January 2023, Bureau of Indian Affairs ("BIA") identified ERUBEY ARCIGA MEDRANO as a leader/organizer for a drug trafficking organization operating in the Orville, Washington area, on the Colville Indian Reservation, and on the Crow Indian Reservation in Montana. MEDRANO and his father, Virgilio Arciga GALVAN, were engaged in the large-scale distribution of methamphetamine and fentanyl in the Eastern District of Washington and elsewhere. A takedown occurred on April 19, 2023, in both the District of Montana and the Eastern District of Washington. As a result of the takedown, numerous pounds of methamphetamine, fentanyl, and other drugs were removed from the Oroville community and seized from property associated with MEDRANO, GALVAN, and others.

During the investigation, BIA, the Drug Enforcement Administration ("DEA"), Washington State law enforcement, and Colville Tribal law enforcement conducted a series of controlled buys, beginning in January 2023 through March 2023 from MEDRANO and individuals selling drugs on MEDRANO's behalf. The investigation revealed that MEDRANO, GALVAN, and Luis Esquivel-BOLANOS (also known as "Colorado") exercised control over the drug trafficking operation.

### January 3, 2023 Controlled Purchase of Fentanyl Pills from VANATTA

On January 3, 2023, the investigation team conducted a controlled buy from the MEDRANO drug trafficking organization, utilizing a confidential informant. Specifically, the informant called a phone number associated with MEDRANO to arrange for the purchase of fentanyl-laced pills, and a female answered. The informant eventually spoke with Defendant Chad VANATTA and arranged to meet VANATTA in Omak, Washington to purchase a "roll," which is code for 100 fentanyl-laced pills.

PLEA AGREEMENT - 6

During the controlled buy, the informant successfully purchased what were purported to be 100 pills from defendant VANATTA. Upon completion of the transaction, investigators met with the informant and collected the fentanyl-laced pills. Poll camera footage showed defendant VANATTA departing from MEDRANO's residence shortly before the controlled buy and returning in the same vehicle after the controlled buy. These events all occurred within the Eastern District of Washington.

The Washington State Patrol crime laboratory tested one of the tablets from the controlled buy and determined it contained fentanyl. The laboratory estimated there were 98 tablets and the net weight of all the tablets was 10.98 grams.

**February 16, 2023 Controlled Buy of Methamphetamine from VANATTA**

On February 16, 2023, the investigation team conducted another controlled buy from the MEDRANO drug trafficking organization, utilizing a confidential informant. The informant contacted defendant VANATTA and arranged to purchase two ounces of methamphetamine from VANATTA.

The informant subsequently met defendant VANATTA at VANATTA's residence in Tonasket, Washington and VANATTA provided the informant with methamphetamine in exchange for $400. Upon completion of the drug transaction, the informant met with investigators, who collected the methamphetamine. These events all occurred within the Eastern District of Washington. Defendant VANATTA knew the substance he sold the informant was methamphetamine.

In connection with the controlled purchase, investigators monitored the remote video surveillance cameras installed near MEDRANO's residence. The video showed defendant VANATTA arrive at the residence in a green Pontiac Sunfire, enter a trailer utilized by MEDRANO, and then return to the Sunfire. Defendant VANATTA was later observed by investigators arriving at his home in Tonasket in the green Pontiac Sunfire. After the controlled buy, defendant VANATTA returned to MEDRANO's residence in the green Pontiac Sunfire.

PLEA AGREEMENT - 7

The DEA's laboratory has tested the methamphetamine from the controlled buy and determined it contains approximately 57 grams of actual (pure) methamphetamine, a Schedule II controlled substance.

### March 14, 2023 Controlled Buy of Methamphetamine from VANATTA

On March 14, 2023, the investigation team conducted another controlled buy from the MEDRANO drug trafficking organization utilizing a confidential informant. The informant arranged with defendant VANATTA to meet at VANATTA's residence in Tonasket to purchase four ounces of methamphetamine.

While the informant was in route to defendant VANATTA's house, investigators simultaneously monitored the remote video surveillance from the pole camera installed near MEDRANO's residence and observed a Pontiac Sunfire depart the trailer and drive away. Approximately sixteen minutes later, defendant VANATTA arrived at his residence in Tonasket in the Pontiac Sunfire. The informant then successfully purchased methamphetamine from defendant VANATTA. These events all occurred within the Eastern District of Washington.

The DEA's laboratory has tested the methamphetamine from the controlled buy and determined it contains approximately 108 grams of actual (pure) methamphetamine, a Schedule II controlled substance.

### April 19, 2023 Search Warrant

On April 19, 2023, the aforementioned search warrants were executed. During the execution of search warrants, BIA, DEA, and their law enforcement partners recovered large quantities of illegal controlled substances from premises associated with MEDRANO, GALVAN, and BOLANOS. These included fentanyl-laced pills, methamphetamine, heroin, and cocaine. In total, law enforcement partners seized approximately 161,000 fentanyl-laced pills (to include "Mexi-blues" and rainbow-colored pills), approximately 80 pounds of methamphetamine, approximately 6 pounds of heroin, and approximately 2.2

pounds of cocaine. Law enforcement also seized approximately 12 firearms and approximately $6,600 in U.S. currency.

Since the time of the takedown, several Defendants have agreed to come forward and cooperate. Specifically, the United States would present evidence from one such cooperating defendant (hereafter "CD"), who positively identified Defendant VANATTA as a distributor for this drug trafficking organization (hereafter "DTO") and reported that VANATTA made approximately one to three deliveries of drugs a day on average.

While Defendant was not aware of the full extent of the drug trafficking operations and was not involved in the distribution of all of the narcotics discussed herein (e.g., the drugs recovered from MEDRANO's compound or from the picker cabins), Defendant was aware that the MEDRANO DTO was distributing large quantities of drugs beyond those that he personally distributed. VANATTA delivered drugs to customers on behalf of the MEDRANO DTO and the transactions usually involved at least 50 grams of methamphetamine or at least 10 grams of fentanyl.

9. The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving the illegal activity charged in the Indictment, unless Defendant breaches this Plea Agreement before sentencing. The United States further agrees to dismiss any remaining counts charged against Defendant in the April 18, 2023 Indictment.

10. United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the

PLEA AGREEMENT - 9

Guidelines. The United States and Defendant agree to the following Guidelines calculations:

    a.    *Base Offense Level and Application of Relevant Conduct*:

The parties agree and stipulate Defendant distributed at least 165 grams of "ice" (methamphetamine), at least an additional 2.5 kilograms of a mixture or substances containing a detectable amount of methamphetamine, and at least 575 grams of fentanyl pills. Accordingly, the parties agree and stipulate that Defendant distributed more than 3,000 but less than 10,000 kilograms of converted drug weight and that this amount properly reflects Defendant's overall relevant conduct.

Thus, the Government and Defendant agree that the base offense level for Count 5, is 30.[1] *See* USSG §2D1.1(a)(5), (c)(4); USSG §1B1.3(a).

    b.    *Special Offense Characteristics*:

The parties agree Defendant is eligible for application of the safety valve provisions of 18 U.S.C. § 3553(f) and USSG § 5C1.2. If the Court finds Defendant has met the criteria set forth in 18 U.S.C. § 3553(f)(1)-(5), Defendant shall receive a two-level reduction and can be sentenced without regard to the otherwise applicable mandatory minimum.

    c.    *Role Adjustments*:

The United States and Defendant agree that Defendant was a minor participant in the overall conduct and therefore, should receive a two-level reduction in his offense level pursuant to USSG §3B1.2(b).[2]

---

[1] The parties recommend the Court utilize the Drug Conversation table due to the multiple types of controlled substances. *See* USSG §2D1.1 n. 8(D).

[2] Furthermore, because this adjustment applies, Defendant's base offense level was reduced from 32 to 30 pursuant to U.S.S.G. §2D1.1(a)(5).

PLEA AGREEMENT - 10

      d.    *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

      e.    *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

      f.    *Criminal History*:

The United States and Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be

PLEA AGREEMENT - 11

determined by the Court at sentencing after the Presentence Investigation Report is completed.

11. Length of Incarceration:

The parties are free to argue for any lawful sentence. The United States is not promising to recommend any specific sentence of imprisonment.

12. Supervised Release:

The United States and Defendant each agree to recommend 4 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    (a). Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs; and

    (b). The United States Probation Office may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, office, vehicles, belongings, and areas under Defendant's exclusive or joint control.

13. Criminal Fine:

The United States and Defendant agree to recommend the Court impose no criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty

plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. **Mandatory Special Penalty Assessment:**

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013.

15. **Payments While Incarcerated:**

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. **Additional Violations of Law Can Void Plea Agreement:**

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. **Waiver of Appeal and Collateral Attack Rights:**

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives Defendant's right to appeal Defendant's conviction and/or sentence. Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

PLEA AGREEMENT - 13

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a. this Plea Agreement shall become null and void;

    b. the United States may prosecute Defendant on all available charges;

    c. the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

PLEA AGREEMENT - 14

19. <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____ AUSA Heinrich for:      _2/28/24_____
Richard R. Barker                                  Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to the charges relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than

PLEA AGREEMENT - 15

those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____    2-28-24
CHAD VANATTA                                Date
Defendant

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I have further advised my client by pleading guilty to the charges relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____    2-28-24
David Partovi                              Date
Attorney for the Defendant

PLEA AGREEMENT - 16